1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10   JUAN MATIAS TORRES,                    CASE NO. 1:16-cv-01525-LJO-MJS (PC)

11            Plaintiff,

12      v.                                  **FINDINGS AND RECOMMENDATION TO
                                            GRANT DEFENDANTS' PARTIAL MOTION
13   CONNIE GIPSON, et al.,                 TO DISMISS**

14            Defendants.                   (ECF No. 26)

15                                          **FOURTEEN (14) DAY OBJECTION
                                            DEADLINE**
16

17

18   **I.      Procedural History**

19            Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil

20   rights action brought pursuant to 28 U.S.C. § 1983.

21            On May 22, 2017, the District Judge screened Plaintiff's complaint and concluded

22   that some, but not all of his claims were cognizable. Plaintiff was provided with

23   applicable pleading standards and was given leave to amend. (ECF No. 13.) On July 31,

24   2017, the District Judge screened Plaintiff's first amended complaint and again

25   concluded that some, but not all of Plaintiff's claims were cognizable. (ECF No. 18.) In

26   addressing the cognizable claims, the District Judge referred back to the prior screening

27   order. The non-cognizable claims were dismissed and service was initiated.

28

1    Based on the District Judge's two screening orders (ECF Nos. 13 and 18), the

2  action proceeds on Plaintiff's First Amendment Retaliation claim against Defendants

3  Gipson, Clausell, Case, Mayo, Galaviz, Matta, Williams,[1] Smith, Babineaux-Prince,

4  Henderson, and Weaver, and his Fourteenth Amendment Due Process claim against

5  Defendants Gipson, Clausell, Case, Mayo, Galaviz, Matta, Williams, Weaver, Villarial,

6  Chavez, Smith, Babineaux-Prince, Henderson, and Briggs, as stated in the first

7  amended complaint. (ECF No. 18.)

8    Before the Court is Defendants' motion to dismiss. (ECF No. 26.) Plaintiff filed an

9  opposition. (ECF No. 30.) Defendants filed a reply. (ECF No. 31.) The matter is

10  submitted. Local Rule 230(*l*).

11  **II.    Plaintiff's Claims**

12    Plaintiff is incarcerated at California Substance Abuse Facility, but complains of

13  events that occurred at Corcoran State Prison in Corcoran, California ("CSP-COR"). His

14  allegations may be summarized essentially as follows.

15    On or around July 7, 2013, while housed at CSP-COR in a Security Housing Unit

16  ("SHU"), Plaintiff participated in a hunger strike. On July 15, 2013, Plaintiff was issued a

17  Rules Violation Report, which he alleges was fabricated, for his participation in the

18  hunger strike. On July 19, 2013, Plaintiff was found guilty of participation in the hunger

19  strike and lost credit and television, radio and yard access days.

20    On July 25, 2013, Plaintiff appeared before the Institutional Classification

21  Committee ("ICC") for an annual review. There, Defendants Gipson, Clausell, Case,

22  Mayo, Galaviz, and Matta determined that Plaintiff should be transferred to Pelican Bay

23  SHU, the furthest SHU from Plaintiff's home and family.

24    On August 11, 2013, Plaintiff filed an inmate grievance regarding the allegedly

25  fabricated July 19 disciplinary action. After Plaintiff had completed his punishments for

---

[1] Defendant Williams was never served and therefore is not before the Court. On October 10, 2017, the undersigned ordered Plaintiff to show cause why Defendant Williams should not be dismissed. (ECF No. 24.) The undersigned then issued findings and recommendations recommending that Defendant Williams be dismissed from this action without prejudice. (ECF No. 34.) Those findings and recommendations remain pending.

1  the disciplinary violation, Plaintiff's grievance was granted and the Rules Violation Report
2  was dismissed.

3  On August 23, 2013, Defendant Williams approved Plaintiff's transfer to the
4  Pelican Bay SHU with a transfer expiration date of December 21, 2013. Plaintiff was still
5  housed in Corcoran SHU when that date passed.

6  On December 24, 2013, Defendants Smith, Prince, Henderson, Mayo, Galaviz,
7  and Weaver held a 180-day review ICC hearing, although 180 days had not passed. The
8  panel put Plaintiff back up for transfer to Pelican Bay despite his hardship request for a
9  move to the SHU at CSP-Sacramento.

10  On January 14, 2014, Plaintiff was transferred to Pelican Bay. There were no
11  available beds in SHU so he was housed in Administrative Segregation (Ad-Seg). Ad-
12  Seg prisoners have fewer privileges than SHU prisoners. Plaintiff spent three-and-a-half
13  months in Pelican Bay Ad-Seg, and then was moved to Pelican Bay SHU on April 30,
14  2014.

15  On July 23, 2014, Pelican Bay administration found Plaintiff met criteria for a
16  hardship transfer back to Corcoran SHU. Plaintiff was transferred to Corcoran SHU on
17  December 19, 2014.

18  On January 6, 2014, Plaintiff filed a grievance regarding the ICC hearing action, in
19  which he stated that he met the criteria for a hardship transfer to the California State
20  Prison, Sacramento SHU, and that his endorsed recommended transfer to the Pelican
21  Bay SHU was an unreasonable hardship. On March 6, 2014, Defendants Villarrial and
22  Chavez reviewed the appeal at the first level. They stated that CSP-Corcoran had no
23  authority to override the decision to transfer Torres. On April 14, 2014, Defendant Smith
24  reviewed the appeal at the second level, and denied it for the same reason. Defendant
25  Briggs denied the appeal at the third level on November 25, 2014.

26  **III.    Legal Standard – Motion to Dismiss**

27  A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of
28  a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the

3

1  absence of sufficient facts alleged under a cognizable legal theory. Conservation Force

2  v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011). In resolving a 12(b)(6) motion, a

3  court's review is generally limited to the operative pleading. Daniels-Hall v. Nat'l Educ.

4  Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). However, courts may properly consider matters

5  subject to judicial notice and documents incorporated by reference in the pleading

6  without converting the motion to dismiss to one for summary judgment.  Lee v. City of

7  Los Angeles, 250 F.3d 668, 688 (9th Cir. 1986); Mack v. S. Bay Beer Distributors, Inc.,

8  798 F.2d 1279, 1282 (9th Cir. 1986).

9        To survive a motion to dismiss, a complaint must contain sufficient factual matter,

10  accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal,

11  556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

12  (2007)); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Serv., 572 F.3d

13  962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw

14  all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998.

15  Pro se litigants are entitled to have their pleadings liberally construed and to have any

16  doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012);

17  Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d

18  1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

19  **IV.    Discussion**

20        Defendants contend that Plaintiff's only cognizable claims are his claims against

21  Defendants Smith, Prince, Henderson, Mayo, Galaviz, and Weaver for approving his

22  transfer to Pelican Bay in retaliating for his having filed grievances. Defendants move

23  that all other claims be dismissed. Specifically, Defendants contend that: (1) Plaintiff's

24  due process claims arising out of his transfer should be dismissed; (2) his due process

25  claims arising out of his grievances should be dismissed; (3) Defendants are entitled to

26  qualified immunity for retaliation claims based on the hunger strike because it was not

27  clearly established in July 2013 that participation in a prison hunger strike was protected

28  First Amendment activity; (4) Plaintiff's claims for declaratory judgment should be

1  dismissed; and (5) damages claims brought against Defendants in their official
2  capacities should be dismissed.

3  **A.    Due Process Claims**

4  The District Judge found that Plaintiff's first amended complaint stated cognizable
5  due process claims against all Defendants for not considering evidence provided by
6  Plaintiff when they (1) decided to transfer him to Pelican Bay, and (2) reviewed the 602
7  form that he filed.

8  **1.    Transfer**

9  The Due Process Clause protects prisoners against deprivations of liberty without
10  the procedural protections to which he is entitled under the law; Wolff v. McDonnell, 418
11  U.S. 539, 556 (1974); Wilkinson v. Austin, 545 U.S. 209, 221 (2005). In order to state a
12  cause of action for deprivation of procedural due process, a plaintiff must first establish
13  the existence of a liberty interest for which the protection is sought. Liberty interests may
14  arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S.
15  460, 466 (1983). State created liberty interests are limited to freedom from restraint
16  which "imposes atypical and significant hardship on the inmate in relation to the ordinary
17  incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

18  Plaintiff's allegations regarding his transfer to Pelican Bay fail to state a due
19  process claim. Prison inmates do not have a constitutional right to be incarcerated at a
20  particular correctional facility or to be transferred from one facility to another. Meachum
21  v. Fano, 427 U.S. 215, 224-25, 96 S.Ct. 2532 (1976); see also Olim v. Wakinekona, 461
22  U.S. 238, 244-45, 103 S.Ct. 1741 (1983). Thus, Plaintiff's complaint that he was
23  transferred to Pelican Bay, rather than a facility nearer to his family, cannot  constitute a
24  basis for a claim.

25  Plaintiff also complains that he was temporarily placed in Ad-Seg at the time of his
26  transfer, rather than SHU, where he formerly was held. The District Judge concluded
27  that this claim was cognizable under Hewitt v. Helms, 459 U.S. 460, 476 (1983).
28  However, as Defendants point, out Hewitt was overruled in relevant part by Sandin v.

1  Conner, 515 U.S. 472, 484 (1995). Following Sandin the proper analysis is as follows:

2  "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to

3  more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005)

4  (citation omitted). While state statutes may create liberty interests that are entitled to

5  procedural due process protections, Montanye v. Haymes, 427 U.S. 236, (1976), these

6  interests will be generally limited to freedom from restraint that imposes "atypical and

7  significant hardship on the inmate in relation to the ordinary incidents of prison life,"

8  Sandin, 515 U.S. at 484. See, e. g., Vitek v. Jones, 445 U.S. 480 (1980) (finding that

9  such a liberty interest was created by involuntary transfer of an inmate to a mental

10  hospital); Washington v. Harper, 494 U.S. 210 (1990) (finding a liberty interest in the

11  involuntary administration of psychotropic drugs). A plaintiff must assert a "dramatic

12  departure" from the standard conditions of confinement before due process concerns are

13  implicated. Sandin, 515 U.S. at 485–86.

14  Plaintiff's allegations do not reflect "atypical and significant hardship." See

15  Sandin, 515 U.S. at 484 (transfer to more restrictive conditions of confinement is not, by

16  itself, sufficient to indicate atypical and significant hardship); Serrano v. Francis, 345

17  F.3d 1071, 1078 (9th Cir. 2003) (placement in Ad-Seg does not generally amount to

18  atypical and significant hardship); Thomasson v. Premo, No. 6:14-cv-01788-MO, 2017

19  U.S. Dist. LEXIS 85471 (D. Or. June 2, 2017) (finding that transfer from Oregon to

20  Florida did not constitute atypical or significant hardship). Plaintiff does not make any

21  allegations that would indicate that his transfer to a different facility, even a facility of

22  greater security, constituted a "dramatic departure" from ordinary prison life. Sandin, 515

23  U.S. at 485–86.

24  In his opposition to the motion to dismiss, Plaintiff seems to allege that he was

25  improperly placed in SHU for indefinite periods of time and that Defendants improperly

26  failed to change this designation when they approved his transfers. These allegations

27  are not contained in the First Amended Complaint and may not now be considered on

28  the motion to dismiss. Moreover, even had such allegations been properly pled, they do

6

1    not describe "atypical and significant" hardship in relation to ordinary prison life. While

2    unusually long periods of segregation in violent, overcrowded or dangerous conditions

3    may be constitute a cognizable due process claim, Plaintiff makes no such specific

4    allegations here regarding his transfers or Defendants' review of his transfers. See

5    Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003) (noting without deciding that a two year

6    period of segregation in a violent and overcrowded conditions while undergoing forced

7    psychiatric evaluation may constitute "atypical and significant hardship").

8            **2.**      **Grievances**

9       On screening, the Court found the following allegations stated a cognizable claim:

10   On March 6, 2014, Villarrial and Chavez reviewed the 602 Inmate Grievance form

11   regarding his ICC hearing without considering the evidence. On April 14, 2014, Smith

12   reviewed Plaintiff's appeal at the second level of review without considering any of

13   Plaintiff's evidence. On November 25, 2014, Briggs reviewed Plaintiff's appeal without

14   considering any of Plaintiff's evidence. (ECF No. 13.)

15       Defendants are correct that Plaintiff has no stand-alone due process rights related

16   to the administrative grievance process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.

17   2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Failing to properly process a

18   grievance does not constitute a due process violation. See, e.g., Wright v. Shannon, No.

19   1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's

20   allegations that prison officials denied or ignored his inmate appeals failed to state a

21   cognizable claim under the First Amendment); Williams v. Cate, No. 1:09-cv-00468-

22   OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no

23   protected liberty interest in the vindication of his administrative claims."). Failing to

24   consider Plaintiff's evidence does not constitute a due process violation. This claim is not

25   cognizable and should be dismissed.

26       Based on the foregoing, the Defendants' motion to dismiss should be granted in

27   relation to Plaintiff's due process claims.

28

## B. Hunger Strike Claims

On screening, the Court found that Plaintiff alleged cognizable retaliation claims against Gipson, Clausell, Case, Mayo, Galaviz, Matta, Smith, Prince, Henderson, Williams and Weaver for retaliating against Plaintiff for his participation in a hunger strike.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009) (additional citation omitted)). "Qualified immunity shields an officer from liability even if his or her action resulted from a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (citation and quotation marks omitted). "The purpose of qualified immunity is to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. (citation and quotation marks omitted).

Resolving a claim of qualified immunity requires courts to determine whether the facts alleged, when taken in the light most favorable to the plaintiff, violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 555 U.S. at 236.

The first prong asks whether the state actor violated the plaintiff's constitutional right; if the answer to that question is "yes," courts must then determine whether the constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. Id. (citing Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) and Saucier, 533 U.S. at 201).

"For the second step in the qualified immunity analysis—whether the

constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos, 661 F.3d at 442 (quoting Ashcroft v. al–Kidd, 563 U.S. 731 (2011) (some internal marks omitted)). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition" Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al–Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712. A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." Community House, Inc. v. City of Boise, 623 F.3d 945, 967 (9th Cir. 2010) (citing Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996)). It will, however, "be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [that the court] can conclude that the law was clearly established on the basis of unpublished decisions only." Id.

A search of the case law reveals that there are no Supreme Court and Ninth Circuit opinions that shed light on whether a hunger strike was clearly protected conduct in July 2013. District court and out of circuit cases are not consistent in their conclusions

on this issue. Compare Espinoza v. Kellogg, No. 12-5414 YGR, 2013 U.S. Dist. LEXIS 136901, 2013 WL 5371375, at *2 (N.D. Cal. Sept. 24, 2013) (liberally construing complaint to find hunger strike as protected conduct); Dumbrique v. Brunner, No. 14-cv-02598-HSG, 2016 U.S. Dist. LEXIS 78191, 2016 WL 3268875, at *7 and *14-*15 (N.D. Cal. June 15, 2016) (finding that hunger strike to protest SHU living conditions was protected conduct for the purposes of a First Amendment retaliation claim but granting qualified immunity because whether a hunger strike is "protected conduct" is not "clearly established" law); Shaw v. Hall, No. 12-0135 CAR MSJ, 2013 U.S. Dist. LEXIS 146875, 2013 WL 5606562, at *9 (M.D. Ga. July 17, 2013) ("Plaintiff's grievances, lawsuits, and participation in a prison investigation and hunger strike are likely forms of "protected" conduct."); Ajaj v. Fed. Bureau of Prisons, No. 08-2006 MSK MJW, 2011 U.S. Dist. LEXIS 26393, 2011 WL 902440, at *12 (D. Colo. March 10, 2011) ("The Defendants do not appear to dispute that a hunger strike can constitute activity protected by the First Amendment, and the Court agrees that, in certain circumstances, it can."); Brown v. Graham, No. 9:07 CV 1353, 2010 U.S. Dist. LEXIS 144188, 2010 WL 6428251, at *16 (N.D.N.Y. March 30, 2010) (questioning validity of hunger strike as a protected conduct, but assuming without deciding that it is) with Crawford v. Kalahan, No. 12-1101 JPG, 2012 U.S. Dist. LEXIS 170796, 2012 WL 6016897, at *2 (S.D. Ill. Dec. 3, 2012) ("The Court is not aware of any specific guarantee under the First Amendment, or any other constitutional provision, that protects inmate hunger strikes."); Khaldun v. Daughtery, No. 09- 350 SEB TAB, 2009 U.S. Dist. LEXIS 118707, 2009 WL 5170039, at *1 (S.D. Ind. Dec. 17, 2009) ("[prisoner's] act of going on a hunger strike was not protected activity under the First Amendment."); Fulton v. Lamarque, No. 03-4709 RMW (PR), 2008 U.S. Dist. LEXIS 26234, 2008 WL 901860 at *5 (N.D. Cal. Mar. 31, 2008) (segregation and institution of disciplinary proceedings against plaintiff not retaliatory because prisoner had no First Amendment right to instigate a hunger strike).

Districts courts have granted qualified immunity on similar claims. See e.g., Arredondo v. Drager, No. 14-cv-04687-HSG, 2016 U.S. Dist. LEXIS 91761, at *51 (N.D.

1  Cal. July 14, 2016) (prison official who transferred a prisoner in retaliation for

2  participating in a hunger strike was entitled to qualified immunity); Bruce v. Woodford,

3  No. 1:07-cv-00269-BAM PC, 2016 U.S. Dist. LEXIS 96164, at *86 (E.D. Cal. July 22,

4  2016) (granting qualified immunity to prison officials who engaged in retaliatory activity

5  against prisoner for participating in a hunger strike); Williamson v. Cate, No. C 12-6237

6  RS (PR), 2016 U.S. Dist. LEXIS 42737, at *5-6 (N.D. Cal. Mar. 29, 2016) (granting

7  qualified immunity for Brown v. McGinnis, No. 05-758S, 2012 U.S. Dist. LEXIS 10847,

8  2012 WL 267638, at *3-*4 (W.D.N.Y. Jan. 30, 2012) (granting qualified immunity on

9  prisoner's retaliation claim because whether a hunger strike is "protected conduct" is not

10  "clearly established" law); Brown v. Graham, No. 9:07 CV 1353, 2010 U.S. Dist. LEXIS

11  144188, 2010 WL 6428251, at *23 (N.D.N.Y. March 30, 2010) (same).

12  Because the law was not clearly established as to whether an inmate's

13  participation in a hunger strike is protected speech under the First Amendment, it would

14  not have been clear to a reasonable prison official that transferring Plaintiff for engaging

15  in a hunger strike would be unlawful retaliation. Thus, Defendants are entitled to

16  qualified immunity on Plaintiff's First Amendment claims regarding the hunger strike.

17  Accordingly, their motion should be granted and these claims should be dismissed.

18  **C.    Declaratory Relief**

19  Because Plaintiff's claims for damages necessarily entails a determination

20  whether his rights were violated, his separate request for declaratory relief is subsumed

21  by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005). Therefore,

22  Defendants' motion should be granted and Plaintiff's claim for declaratory relief should

23  be dismissed.

24  **D.    Official Capacity Claims**

25  Plaintiff's first amended complaint brings claims against Defendants in their official

26  capacity. Although the District Judge's first screening order clearly stated that claims

27  against Defendants for damages in their official capacity were not cognizable, the

28  second screening order did not address these claims.

11

1        Plaintiff's official capacity claim for damages against the Defendant is barred by

2 the Eleventh Amendment. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169-70 (1985)

3 (Eleventh Amendment immunity from damages in federal court action against state

4 remains in effect when state officials are sued for damages in their official capacity).

5        Thus, to extent the screening order left these claims in doubt, they should be

6 dismissed.

7        **V.    Conclusion and Recommendation**

8        Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion

9 to dismiss (ECF No. 26) be GRANTED. The action should proceed only on Plaintiff's

10 claims for First Amendment retaliation against Defendants Smith, Prince, Henderson,

11 Mayo, Galaviz, and Weaver for approving Plaintiff's transfer to Pelican Bay in retaliation

12 for Plaintiff's protected First Amendment activity of filing a prison grievance, and all other

13 claims and Defendants should be dismissed.

14        The findings and recommendation will be submitted to the United States District

15 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).

16 Within fourteen (14) days after being served with the findings and recommendation, the

17 parties may file written objections with the Court. The document should be captioned

18 "Objections to Magistrate Judge's Findings and Recommendation." A party may respond

19 to another party's objections by filing a response within fourteen (14) days after being

20 served with a copy of that party's objections. The parties are advised that failure to file

21 objections within the specified time may result in the waiver of rights on appeal.

22 <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923

23 F.2d 1391, 1394 (9th Cir. 1991)).

24

IT IS SO ORDERED.

25

26   Dated:   <u>April 16, 2018</u>        /s/ *Michael J. Seng*

27                              UNITED STATES MAGISTRATE JUDGE

28