UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MATIAS TORRES,<br><br>Plaintiff,<br><br>v.<br><br>CONNIE GIPSON, et al.,<br><br>Defendants. | CASE NO. 1:16-cv-01525-LJO-JLT (PC)<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS FOR EXTENSION OF TIME;**<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO STAY RESOLUTION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**<br><br>(Docs. 64-66, 78)<br><br>**FOURTEEN-DAY DEADLINE** |

This action proceeds on plaintiff's First Amendment retaliation claim against defendants Smith, Prince, Henderson, Mayo, Galaviz, and Weaver. Plaintiff accuses these defendants of retaliating against him for filing inmate grievances by recommending him for transfer to Pelican Bay State Prison. Pending now is defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 64), and plaintiff's motion to stay or deny the summary judgment motion pursuant to Federal Rule of Civil Procedure 56(d) and Local Rule 260(b). For the reasons

set forth below, plaintiff's motion will be denied, and the Court will recommend that Defendants' motion also be denied.

## I. Plaintiff's Allegations

### A. Hunger Strike

Plaintiff's allegations arose while he was housed in the Segregated Housing Unit ("SHU") at Corcoran State Prison in Corcoran, California ("CSP-Cor"). Plaintiff alleges that on or around July 7, 2013, he participated in a hunger strike that resulted in the issuance of a fabricated Rules Violation Report ("RVR"). On July 19, 2013, plaintiff was found guilty of participation in the hunger strike and lost credit and television, radio and yard access days. On August 11, 2013, plaintiff filed an inmate grievance regarding the fabricated RVR. The grievance was ultimately granted, and the RVR was dismissed.

### B. Transfer to Pelican Bay State Prison SHU

On July 25, 2013, plaintiff appeared before the Institutional Classification Committee ("ICC") for an annual review. There, it was determined that plaintiff should be transferred to Pelican Bay State Prison ("PBSP") SHU, the furthest SHU from plaintiff's home and family. This transfer was approved approximately one month later with a transfer expiration date of December 21, 2013. Plaintiff, however, was still housed in the CSP-Cor SHU when that date passed.

On December 24, 2013, Defendants Smith, Prince, Henderson, Mayo, Galaviz, and Weaver held a 180-day review ICC hearing. The panel put plaintiff back up for transfer to PBSP despite his hardship request for a move closer to Sacramento.

On January 14, 2014, plaintiff was transferred to Pelican Bay. However, because there were no available beds in the PBSP SHU, he was housed in Administrative Segregation ("Ad-Seg") where prisoners have fewer privileges than SHU prisoners. Plaintiff spent three-and-a-half months in PBSP Ad-Seg and then was moved to PBSP SHU on April 30, 2014.

On July 23, 2014, PBSP administration found plaintiff met criteria for a hardship transfer back to CSP-Cor SHU, and he was transferred there on December 19, 2014.

## II. Undisputed Facts

On the form complaint, plaintiff identifies inmate grievance Log No. CO-14-00179 as the

grievance that he filed regarding his transfer to the Pelican Bay SHU. <u>See</u> Compl. at 2. This grievance, which was filed January 6, 2014, alleges as follows:

> On 12/24/13 I had an I.C.C. Review were I had addressed the issue and requested a hardship transfer to CSP-Sacramento S.H.U. and my immediate family sent letters along doctors notes stating the importance why and requesting that I be given a hardship transfer to CSP-Sac. Family relationships and community ties are important. CSP-Sac is a institution of the appropriate security level a S.H.U. that is closest to my home and closest S.H.U. to where my parents, daughter and the rest of my immediate family reside. There are no classification factors that would make a placement to CSP-Sac unreasonable. Yet at ICC on 12/24/13 I was and the decision was made to refer me to transfer to PBSP SHU with alternative of COR SHU which is unreasonable once you look into the factors for the request for a hardship transfer to SAC SHU. I have brought up the issue of a hardship transfer on several occasions to CCI and CCII and was told it will be considered at my December ICC review, which is false it wasn't even considered or given a thought. There is no classification factors or any reason why my request for a hardship to SAC SHU should be denied. Doctors note from my mothers doctor how can you continue to deny a hardship transfer request!?

CDCR 602-A Inmate/Parolee Appeal Form, Log No. CSP-Cor 14-179 (errors in original), Decl. of M. Voong in Supp. of Defs.' Mot. Summ. J. Ex. G (Doc. 64-4 at 134-37). By way of relief, plaintiff asked "to be given a hardship chrono transfer to SAC SHU as soon as possible and that my current endorsement to PBSP be cancelled."

Plaintiff's grievance was denied at the first level of review on the grounds that plaintiff had already been transferred to PBSP, and CSP-Cor did not have authority to override a Classification Services Representative decision. Voong Decl. Ex. G (Doc. 64-4 at 117-18). The first level response also noted that "populations pressures in the CDCR" sometimes prevent inmates from being housed close to home. Plaintiff appealed this decision on March 28, 2014:

> Dissatisfied due to the fact that I meet the criteria for a hardship transfer and that there are no classification factors that would make a placement to CSP-SAC unreasonable. First level response used the excuse that 'due to the population pressures in the CDC["] which is false. I was already housed accordingly in the SHU at Corcoran and it served no purpose to transfer me to Pelican Bay Prison where there was no bedspace in the S.H.U. at P.B.S.P. that he is waiting in A.S.U. his transfer served no penological interest involving security or prison population period! If CSP-COR does not have the authority it certainly has the authority to make the recomendation to CSR just as CSP-COR caused the whole pointless transfer! My hardship request was to be placed closer to home yet CSP-COR did not acknowledge it could careless about family ties and a prisoners well being and with

> a blantant disregard for Penal Code 5068 put me up to the furthest prison possible which served no penological interest when I was already housed accordingly in a S.H.U. at Corcoran. And all they did was create a hardship and a adverse effect on me and my family which served no interest involving security or prison population period. On my December I.C.C. review I could have been easily put up to transfer to CSP-SAC with a alternative to CSP-COR since I meet the criteriria there are no classification factors that would make a placement to CSP-SAC unreasonable especially when my mother has health problems supported by doctors notes and the rest of my immediate family is requesting that I be given a hardship transfer.

Voong Decl. Ex. G (Doc. 64-4 at 134-37) (errors in original).

On April 14, 2014, plaintiff's grievance was denied at the second level of review on the same grounds used to deny the grievance at the first level of review. Voong Decl. Ex. G (Doc. 64-4 at 119-20). Plaintiff again appealed with this decision:

> Dissatisfied due to the fact that the second level reviewer used the same lie and excuse that the first level reviewer had stated. And as I stated I was already housed accordingly at COR-SHU and there served no penological interest involving security or prison population. My hardship transfer was to be placed closer to home yet CDCR did not acknowledge it and could careless about family ties and a prisoners well being and blantantly disregard and don't abide by P.C. 5068 all the letters and doctors notes from my immediate family show that I meet the criteria for a hardship transfer CSP-SAC SHU with an alternative of COR-SHU where I was already housed as I stated there are no classification factors that would make placement to CSP-SAC SHU unreasonable abide by the P.C. 5068 and house me accordingly to CSP-SAC SHU.

Voong Decl. Ex. G (Doc. 64-4 at 134-37) (errors in original).

Plaintiff's grievance was denied at the third level of review on November 25, 2014. Voong Decl. Ex. G (Doc. 64-4 at 11-12.) It was ultimately determined that the classification committee's decision was based upon a reasonable penological interest since plaintiff is a validated gang member and requires housing in the SHU, he had failed to present compelling evidence and a convincing argument to warrant modification of the transfer decision, and population pressures and budget constraints often influence the CDCR's ability to transfer inmates closer to their families.

## III. Legal Standards

### A. Summary Judgment Standards

The court must grant a motion for summary judgment if the movant shows that there is no

4

genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. Anderson, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Id. at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); see Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting Celotex, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Devereaux, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 323.

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to

dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's pleading is signed under penalty of perjury and the facts therein are evidence for purposes of evaluating the defendants' motion for summary judgment.

**B.     California's Administrative Exhaustion Rules**

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be

exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90.

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). To exhaust available administrative remedies, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. Id. § 3084.1(b), § 3084.7(d)(3).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).[1]

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); e.g., id. at 659 (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

**IV.   Plaintiff's Federal Rule of Civil Procedure 56(d) and Local Rule 260(b) Motion**

Plaintiff moves pursuant to Federal Rule of Civil Procedure 56(d) and Local Rule 260(b) to deny and/or stay adjudication of defendants' motion for summary judgment so that he may obtain additional evidence through discovery. (Doc. 66.)

Rule 56(d) provides "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." United States v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002). A party seeking additional discovery under Rule 56(d) must "explain what further discovery would reveal that is 'essential to justify [its] opposition' to the motion[ ] for summary judgment." Program Eng'g, Inc. v. Triangle Publ'ns, Inc., 634 F.2d 1188, 1194 (9th Cir. 1980) (first alteration in original).

---

[1] Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." See Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Cal. Code Regs. tit. 15, § 3084.2); Sapp, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)"); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison or jail's procedures do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'"). Those cases are distinguishable because they did not address the regulation as it existed at the time of the events complained of in Plaintiff's pleading. Section 3084.2 was amended in 2010 (with the 2010 amendments becoming operative on January 28, 2011), and those amendments included the addition of subsection (a)(3). See Cal. Code Regs. tit. 15, § 3084.2 (history notes 11-12 providing operative date of amendment). Wilkerson and Sapp used the pre-2011 version of section 3084.2, as evidenced by their statements that the regulation required the inmate to "describe the problem and the action requested" – a phrase that does not exist in the version of the regulation in effect in and after 2011. Griffin is distinguishable because it discussed the Maricopa County Jail administrative remedies rather than the CDCR's administrative remedies. Whatever the former requirements may have been in the CDCR and whatever requirements may still exist in other facilities, since January 28, 2011, the operative regulation has required California prisoners using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their administrative appeals.

This showing cannot, of course, predict with accuracy precisely what further discovery will reveal; the whole point of discovery is to learn what a party does not know or, without further information, cannot prove. See, e.g., Pac. Fisheries Inc. v. United States, 484 F.3d 1103, 1111 (9th Cir. 2007) ("[T]he purpose of discovery is to aid a party in the preparation of its case ...."); Fed. R. Civ. P. 26(b) advisory committee's note to 1946 amendment) ("The purpose of discovery is to allow a broad search for facts ... or any other matters which may aid a party in the preparation or presentation of his case."). But for purposes of a Rule 56(d) request, the evidence sought must be more than "the object of pure speculation." California v. Campbell, 138 F.3d 772, 779–80 (9th Cir. 1998) (citation omitted). A party seeking to delay summary judgment for further discovery must state "what other specific evidence it hopes to discover [and] the relevance of that evidence to its claims." Program Eng'g, 634 F.2d at 1194 (emphasis added). In particular, "[t]he requesting party must show [that]: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008).

Local Rule 260(b), in turn, provides, in relevant part, "If a need for discovery is asserted as a basis for denial of the motion [for summary judgment], the party opposing the motion shall provide a specification of the particular facts on which discovery is to be had or the issues on which discovery is necessary." E.D. Cal. Local Rule 260(b).

Plaintiff identifies several items of discovery that he contends he needs before defendants' summary judgment motion can be properly adjudicated: (1) copies of all documents, exhibits, and "everything on the court record" in the Kings County Superior Court case In re Juan Matias Torres, Case No. 1SW-0074B; (2) copies "of all documents, exhibits, etc. etc. everything on the court record" in the California Court of Appeal Fifth Appellate District case In re Juan Matias Torres, Case No. F072728.1; and (3) copies of all documents, including "CDCR 1280s," related to plaintiff's ICC hearings in 2014 while he was housed at Pelican Bay State Prison.

Plaintiff argues that the documents he has identified will show a pattern of "retaliatory intent as well as retaliatory motive" on the part of the defendants. Pl.'s Mot. to Deny or Stay Defs.' Mot.

9

Summ. J. at 3 (Doc. 66). He also argues that the documents will show that he "was not fully aware of the issues until the retaliatory actions of defendants started adding up." Reply at 2 (Doc. 79). It is not clear how these documents will make either of these showings. In any event, any alleged pattern of relation appears to be relevant only to the merits of plaintiff's retaliation claim. There is no showing that the pattern bears in any way on the question presently before the Court: whether plaintiff exhausted his administrative remedies prior to filing this lawsuit. For this reason, plaintiff's motion will be denied.

**V.  Defendants' Motion for Summary Judgment**

In their motion for summary judgment, defendants argue that plaintiff did not exhaust his administrative remedies on his retaliation claim. In support, they submit evidence showing that plaintiff submitted a grievance, Log No. CSPC-6-14-0719, in which he complained that the defendants' decision to transfer him from CSP-Cor to PBSP was unreasonable and should be rescinded on grounds of hardship, but at no point did plaintiff complain about retaliation for protected conduct. Defendants have thus carried their burden to demonstrate that there were available administrative remedies for plaintiff and that plaintiff did not properly exhaust those available remedies. The undisputed evidence shows that California provides an administrative-remedies system for California prisoners to complain about their conditions of confinement, and that plaintiff used that California inmate-appeal system to complain about the fact of his transfer but not the defendants' motivation.

Once the defendants met their initial burden, the burden shifted to plaintiff to come forward with evidence showing that something in his case made the existing administrative remedies effectively unavailable to him. See Albino, 747 F.3d at 1172. Plaintiff counters that the grievance suffices to have exhausted his administrative remedies since he was not required to use specific language such as "retaliation," the grievance clearly addresses the unreasonableness of the transfer order, and he claimed therein that the transfer "served no penological interest" and had an "adverse effect" on him and his family.

Defendants argue that this is not enough since the grievance does not include any mention of protected conduct on plaintiff's part or any retaliation on the defendants' part. They further argue

that the phrases "no penological interest" and "adverse effect" are not unique to retaliation claims and do not give notice to prison officials that the transfer order was in retaliation for plaintiff's participation in a hunger strike and/or his pursuit of a grievance seeking a withdrawal of the RVR.

But plaintiff was not required to provide that level of specificity. Instead, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (internal citation omitted). In Griffin, the prisoner plaintiff had fallen while trying to access an upper bunk and filed an inmate appeal stating that he had injured himself when he fell. Id. at 1118. In that inmate appeal, Griffin requested a ladder or a permanent step to access the top bunk. See id. While his appeal was pending, a prison nurse issued Griffin an order for a lower bunk assignment. See id. at 1118-19. In response to Griffin's inmate appeal, a prison official stated that the nurse's order for a lower bunk assignment resolved the problem about which Griffin was complaining. See id. at 1119. Griffin maintained, however, that prison staff disregarded the nurse's order. See id. Griffin appealed the prison official's decision to the Jail Commander and then to the external referee, but he never mentioned in his subsequent inmate appeals that prison staff was disregarding the nurse's order that he receive a lower bunk assignment. See id. Both the Jail Commander and the external referee responded that the nurse's order addressed Griffin's problem and that no further action was necessary. See id.

The Ninth Circuit held that Griffin had failed to properly exhaust his deliberate indifference claim against the prison staff defendants. Griffin, 557 F.3d at 1118, 1121. Specifically, the Ninth Circuit determined that Griffin did not provide prison officials with notice that the prison staff had disregarded the nurse's order for him to receive a lower bunk assignment, and that the officials responding to his appeal had reasonably concluded that the nurse's order solved the problem about which Griffin had complained in his inmate appeal. See id. The court noted that rather than clarifying the problem for the Jail Commander or the external referee, in his inmate appeal Griffin simply continued to merely demand a ladder. See id. The Ninth Circuit concluded that Griffin's inmate appeal did not "provide enough information ... to allow prison officials to take appropriate responsive measures." Id.

Plaintiff's grievance here is distinguishable from that in <u>Griffin</u> because it includes sufficient detail to identify the defendants (members of the "12/24/13 … I.C.C. Review" committee), the wrong for which he seeks redress (the transfer order to PBSP SHU), and an institutional response that would remedy the wrong (revocation of the transfer order and/or a transfer to CSP-Cor or CSP-Sac). Plaintiff's failure then to allege a legal theory or even all the facts underlying his legal claim is not fatal to his exhaustion attempt because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." <u>Griffin</u>, 557 U.S. at 1120. Because the Court concludes that plaintiff has exhausted his administrative remedies as to his retaliation claim, it recommends that defendants' motion be denied.

**VI.    Conclusion**

Based on the foregoing, the Court **ORDERS** that:

1. Plaintiff's motions for extension of time (Docs. 65, 78) are **GRANTED**;
2. Plaintiff's motion to stay or deny the summary judgment motion (Doc. 66) is **DENIED**; and

The Court **RECOMMENDS** that defendants' motion for summary judgment (Doc. 64) be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within 14-days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

Failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 12, 2019**                    **/s/ Jennifer L. Thurston**
                                             UNITED STATES MAGISTRATE JUDGE