UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MATIAS TORRES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CONNIE GIPSON, et al.,<br><br>　　　　Defendants. | CASE NO. 1:16-cv-1525-NONE-JLT (PC)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DECLARE DEFENDANTS' DECLARATIONS SHAMS; AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 99, 105)<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff is a state inmate proceeding on a First Amendment retaliation claim against defendants B. Babineaux-Prince, T. Galaviz, C. Henderson, A. Mayo, J.C. Smith, and D. Weaver. Plaintiff alleges that, in retaliation for his filing of an inmate grievance, the defendants, who were members of an Institutional Classification Committee that was held in December 2013, approved plaintiff for a transfer to another institution.

Defendants have filed a motion for summary judgment, arguing, first, that there is no genuine dispute of material fact as to plaintiff's First Amendment retaliation claim and, second, that they are entitled to qualified immunity. Plaintiff opposes the motion. He also moves to declare the defendants' declarations a sham. These motions are fully briefed and ready for disposition.

///

## I. Undisputed Facts

1. At all times relevant to this action, plaintiff was a state inmate housed at California State Prison in Corcoran, California ("CSP-Cor"). (First Am. Compl. ("FAC") [Doc. 16 at 3-4].)

2. As a validated gang member, plaintiff was required to be housed in the Security Housing Unit ("SHU"). See FAC at 4; Decl. of J. Smith in Supp. of Defs.' Mot. Summ. J. (Doc. 99-4) Ex. A.

### a. Criteria for Placement in the Security Housing Unit

3. In December 2013, the SHU at CSP-Cor was being used primarily for inmates in the mental health services delivery system. Decl. of T. Galaviz in Supp. of Defs.' Mot. Summ. J. (Doc. 99-5) ¶ 6; Smith Decl. ¶ 4; Decl. of C. Henderson in Supp. of Defs.' Mot. Summ. J. (Doc. 99-6) ¶ 4; Decl. of A. Mayo in Supp. of Defs.' Mot. Summ. J. (Doc. 99-9) ¶ 4; Decl. of B. Weaver in Supp. of Defs.' Mot. Summ. J. (Doc. 99-8) ¶ 4; Decl. of D. Prince in Supp. of Defs.' Mot. Summ. J. (Doc. 99-7) ¶ 4; Pl.'s Dep. at 64:9-18.

4. In December 2013, plaintiff was not enrolled in the mental health services delivery system. Galaviz Decl. ¶ 6, Ex. B; Smith Decl. ¶ 4; Henderson Decl. ¶ 4; Mayo Decl. ¶ 4; Weaver Decl. ¶ 4; Prince Decl. ¶ 4; Pl.'s Dep. at 64:9-18.

5. In December 2013, the SHU at California State Prison in Sacramento ("CSP-Sac") was being used primarily for inmates with high risk medical needs, such as HIV. Galaviz Decl. ¶ 6; Smith Decl. ¶ 4; Henderson Decl. ¶ 4; Mayo Decl. ¶ 4; Weaver Decl. ¶ 4; Prince Decl. ¶ 4.

6. In December 2013, plaintiff did not fit the criteria to be housed at CSP-Sac's SHU. That is, he did not have a high risk medical need. Galaviz Decl. ¶ 6, Ex. B; Smith Decl. ¶ 4; Henderson Decl. ¶ 4; Mayo Decl. ¶ 4; Weaver Decl. ¶ 4; Prince Decl. ¶ 4; Pl.'s Dep. at 64:19-21.

### b. The July 9, 2013, Rules Violation Report and Plaintiff's First ICC Appearance

7. On July 9, 2013, plaintiff was issued a Rules Violation Report ("RVR") for participating in a hunger strike. FAC at 3-4; Pl.'s Dep. Ex. D.

8. On July 19, 2013, plaintiff was found guilty of the RVR following a hearing. Pl.'s Dep. Ex. D.

9. On July 25, 2013, plaintiff appeared before an Institutional Classification Committee ("ICC"), which recommended that plaintiff remain in the CSP-Cor SHU pending a transfer to the Pelican Bay State Prison ("Pelican Bay") SHU. FAC at 4.

10. The July 25 ICC decision was based on plaintiff's "validation as an Associate of the Northern Structure prison gang, which poses a threat to the safety and security of the institution." Galaviz Decl., Ex. A.

11. The members of the ICC were aware of plaintiff's pending RVR for participation in the hunger strike. Galaviz Decl., Ex. A.

12. On August 23, 2013, plaintiff's transfer to Pelican Bay was endorsed. FAC at 9. This transfer approval expired on December 21, 2013. FAC at 9, 10.

  **c. Plaintiff's Inmate Grievance Contesting the July 9 RVR**

13. On August 11, 2013, plaintiff filed an inmate grievance contesting the July 9 RVR. FAC at 4; Pl.'s Dep., Ex. D.

14. Plaintiff's inmate grievance was granted at the second level of review, and on November 18, 2013, defendants Associate Warden Smith and Captain Weaver signed an order expunging the RVR from plaintiff's Central File. Pl.'s Opp'n Ex. 6.

15. None of the defendants ever approached plaintiff to discuss the grievance he filed regarding the RVR. Pl.'s Dep. at 55:8-12.

  **d. Plaintiff's Second ICC Appearance**

16. On December 24, 2013, plaintiff appeared before a second ICC. FAC at 10.

17. Prior to the December 24 ICC, plaintiff submitted a hardship request to stay at CSP-Cor or to be transferred to CSP-Sac, where he would be closer to his family. Pl.'s Dep. at 24:18—25:6. Several of plaintiff's family members sent letters in support of plaintiff's hardship request. Pl.'s Opp'n Exs. 11-13.

18. Defendant Chief Deputy Warden J. Smith served as the chairperson of the December 24 ICC. Smith Decl. ¶ 2, Ex. A. Defendants Galaviz, who previously participated in the July 25 ICC, also participated in the December 24 ICC. Galaviz Decl. ¶ 4. Defendant C. Henderson participated in the hearing as a sergeant to address questions or issues raised regarding inmates'

1  housing situations at the time. Henderson Decl. ¶¶ 2-3. Defendant D. Prince participated in the
2  hearing as a licensed clinical social worker to address questions or issues raised regarding inmates'
3  mental health. Prince Decl. ¶¶ 2-3. Defendant Mayo participated in the hearing as the Assistant
4  Institutional Gang Investigator to address questions or issues raised regarding gang status and gang
5  activity. Mayo Decl. ¶¶ 2-3. Lastly, defendant B. Weaver participated at the hearing was the
6  recorder to record the outcome of the proceeding. Weaver Decl. ¶¶ 2-3.

7      19.    The members of the December 24 ICC were aware of plaintiff's RVR and that it
8  had since been dismissed. Smith Decl. Ex. A.

9      20.    Like the July 25 ICC, the December 24 ICC recommended that plaintiff remain at
10 CSO-Cor's SHU pending a transfer to the Pelican Bay SHU because of his gang validation and
11 concerns about the threat to the safety and security of the institution. See Smith Decl. Ex. A.

12     21.    Defendants deny that their recommendation to transfer plaintiff was motivated by
13 retaliation. Galaviz Decl. ¶ 7; Smith Decl. ¶ 5, Henderson Decl. ¶ 5; Mayo Decl. ¶ 5; Weaver Decl.
14 ¶ 5; Prince Decl. ¶ 5.

15     22.    Despite the fact that the transfer recommendation of both the July 25 ICC and the
16 December 24 ICC was premised on plaintiff's gang validation, plaintiff ascribes retaliatory motive
17 to the latter ICC members because they "had the authority to do whatever they want." Pl.'s Dep.
18 Tr. at 66:7-16.

19     **e.  Plaintiff's Inmate Grievance Contesting the Denial of Hardship Transfer**
20         **Request**

21     23.    Plaintiff submitted an inmate grievance regarding the denial of his hardship transfer
22 request. See Pl.'s Opp'n Ex. 8.

23     24.    At the second level response, defendant Smith informed plaintiff that "[t]he ability
24 to be housed in an institution close to your family is important to the California Department of
25 Corrections and Rehabilitation (CDCR) as it affords you the opportunity to maintain personal
26 contact with family. Unfortunately, there are many factors, which influence our ability to keep you
27 close to family. Due to the population pressures in the CDCR, it is not always possible to house
28 you close to home." Pl.'s Opp'n Ex. 8.

4

### f. Plaintiff's Transfer to Pelican Bay

25. On January 14, 2014, plaintiff was transferred to the Pelican Bay SHU. FAC at 14.

26. On July 23, 2014, the Pelican Bay ICC recommended that plaintiff be sent back to the CSP-Cor SHU after considering plaintiff's hardship request. Pl.'s Opp'n Ex. 9.

27. Plaintiff was returned to the CSP-Cor SHU on December 19, 2014. Pl.'s Opp'n Ex. 17.

## II. Legal Standards on Motion for Summary Judgment

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If defendants meet their initial burden, the burden then shifts to plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978,

1  984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the
2  light most favorable to the nonmoving party and determine whether a genuine issue of material fact
3  precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,
4  657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

5  The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611
6  F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

7  **III.   Plaintiff's Motion to Declare Defendants' Declarations Shams**

8  Plaintiff moves to have the defendants' declarations filed in support of their summary
9  judgment motion be declared shams. This motion is premised on the claim that the declarations
10 provide one explanation for the transfer decision, while plaintiff was previously provided a different
11 decision by defendant Smith. Specifically, defendant Smith told plaintiff that the decision to deny
12 his hardship transfer request was because of population pressures in the California Department of
13 Corrections and Rehabilitation. See Pl.'s Opp'n Ex. 8. In their declarations, defendants state that
14 the December 24 ICC decision to transfer plaintiff to the Pelican Bay SHU was because the CSP-
15 Cor and CSP-Sac SHUs were being primarily used to house inmates in the mental health services
16 delivery system and to house inmates with high risk medical needs, respectively. Plaintiff claims
17 that this discrepancy means that the defendants' "stories [are] chang[ing]."

18 "[ ]The Ninth Circuit has held that 'a party cannot create an issue of fact by [submission of]
19 an affidavit contradicting his prior deposition testimony' where the court determines that the later
20 affidavit is merely ''sham' testimony that flatly contradicts earlier testimony.' " Ana Mora et al. v.
21 City of Garden Grove et al., 2020 WL 4760184, at *7 (C.D. Cal. May 1, 2020) (citing to Kennedy
22 v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1999)). "The rationale underlying the sham
23 affidavit rule is that a party ought not be allowed to manufacture a bogus dispute with himself to
24 defeat summary judgment." Nelson v. City of Davis, 571 F.3d 924, 928 (9th Cir. 2009).

25 On consideration of plaintiff's motion, the Court concludes that the sham affidavit rule is
26 inapplicable here. First, the original statement attributed to defendant Smith was made in the
27 context of a second level response to an administrative grievance; it was not testimony given under
28 oath. Second, the sham affidavit rule is not intended to compare one defendant's statements—here,

Smith—to statements made by *other* defendants—Galaviz, Henderson, Prince, Weaver, and Mayo. Third, these other five defendants are not accused of contradicting any of their own prior statements. Lastly, there is in fact no contradiction between Smith's previous statement and his declaration. That is, Smith's response to plaintiff's administrative grievance references "many factors," including population pressures, in making housing decisions. In his declaration, Smith references the priority use of CSP-Cor and CSP-Sac's SHUs for inmates with mental health and medical needs. There is nothing contradictory in these statements since the priority use of those SHUs would suggest that there are space limitations due to preference given to certain groups of prisoners over others. For these reasons, plaintiff's motion will be denied.

## IV.   Defendants' Motion for Summary Judgment

### A. Legal Standard for First Amendment Retaliation

A retaliation claim has five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).

Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Rhodes, 408 F.3d at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere threat of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.

Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir. 1987).

Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is

7

1  "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill
2  the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to
3  dismiss stage. Id. at 569.

4  Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not
5  advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532
6  (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a
7  retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they
8  were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d
9  1221, 1230 (9th Cir.1984).

10  **B. Analysis**

11  Defendants move for summary judgment on the ground that there is no dispute of material
12  fact as to whether their recommendation to transfer plaintiff to the Pelican Bay SHU was in
13  retaliation for plaintiff's August 11, 2013, inmate grievance. They contend that plaintiff is unable
14  to show retaliatory motive since there is no direct or causal link between the grievance and the
15  transfer recommendation, which itself was merely an approval of a previous transfer
16  recommendation. Defendants also argue that there were legitimate penological reasons to transfer
17  plaintiff to Pelican Bay, including safety concerns and space limitations at the CSP-Cor and CSP-
18  Sac SHUs due to their primary use designations for which plaintiff did not qualify.

19  The Court begins its analysis by highlighting that the July 25 ICC recommended that
20  plaintiff be transferred to the Pelican Bay SHU because of his gang validation and concerns about
21  the threat to the safety and security of the institution, and the December 24 ICC made an identical
22  recommendation for the same reasons. Only the second ICC decision, though, is the focus of this
23  action because, in the intervening months, plaintiff submitted a hardship transfer request to be
24  transferred to CSP-Sac so that he could be closer to his family. The December 24 ICC denied the
25  hardship request while recommending a transfer to the Pelican Bay SHU.

26  In his opposition to the defendants' motion for summary judgment, plaintiff dedicates
27  significant space challenging the denial of his hardship request. He argues that he qualified for it
28  under applicable institutional regulations and relies on the fact that, shortly after his transfer to

Pelican Bay, the Pelican Bay ICC granted plaintiff's hardship transfer back to CSP-Cor. To the extent that plaintiff claims his constitutional rights were violated by the defendants' alleged failure to comply with institutional regulations when they denied his request despite his apparent qualification, this claim is not cognizable in a civil rights complaint. See Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989), overruled on other grounds, Nettles v. Grounds, 830 F.3d 922 (9th Cir. 2016); Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981). In any event, this action proceeds only on a First Amendment retaliation claim, and any attempt to argue other claims is improper. (Docs. 18, 34, 40.)

In another instance of focusing solely on the denial of the hardship request, plaintiff takes issue with defendant Smith's statement in his response at the second level of review of plaintiff's grievance challenging the denial of his request. There, Smith indicated that the denial was based, in part, on population pressures in the CDCR. To contradict this assertion, plaintiff relies on a news article in which it is claimed that there are 2,000 gang members in CSP-Cor and California Correctional Institution ("CCI") in Tehachapi. Pl.'s Opp'n Ex. 19. This article, in conjunction with the defendants' interrogatory response that there are 1,024 SHU beds at CSP-Cor's 4A Yard, is apparently intended to undermine Smith's statement by arguing that gang members are routinely housed in the SHU and that the claim of "population pressures" is bogus.

There are several problems with plaintiff's reliance on this article. First, it is dated July 2013 and does not give any indication of the conditions at CSP-Cor and CSP-Sac in December 2013. Second, it is hearsay in that it is being offered for the truth of the matters asserted. Fed. R. Evid. 802. Third, assuming that there were 2,000 verified gang members at CSP-Cor and CCI in December 2013, and further assuming that these gang members were evenly divided between the two institution, these facts would not necessarily undermine Smith's statement about population pressures. Rather, it appears that it would bolster the concerns about safety and space issues in light of the limited SHU beds. And as defendants point out, plaintiff makes the erroneous assumption that validated gang members comprise a group that is separate and distinct from those requiring mental health care or those with high risk medical needs. In fact, these groups could and do overlap.

A more important takeaway from this line of argument, however, is that plaintiff does not

meet his burden on summary judgment by highlighting why the defendants should have granted his hardship request. Rather, he is required to produce evidence showing that their decision to deny that request and to recommend transfer to Pelican Bay SHU was motivated by protected conduct—here, his filing of an inmate grievance challenging the hunger strike RVR. Plaintiff has not met that burden here.

On review of plaintiff's evidence, it is clear that the gravamen of plaintiff's argument is that, because there was "no justifiable reason" for the denial of his hardship transfer request, the defendants' recommendation to transfer plaintiff to the Pelican Bay SHU *must have* been motivated by retaliatory intent stemming from the filing of the inmate grievance. But despite his repeated insistence that these events are related, he fails to submit any evidence of a plausible retaliatory motive or a causal link. At best, plaintiff relies on the timing between the filing of his grievance and the December 24 ICC hearing. Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent.") While timing may provide a causal connection between protected conduct and an adverse action, the 4.5 months at issue here is an insufficient link to raise the suspicion of retaliatory motive. See Quiroz v. Horel, 85 F. Supp. 3d 1115, 1127 (N.D. Cal. Mar. 31, 2016) (citing Clark County School District v. Breeden, 532 U.S. 268, 273-74 (2001) (per curiam) (citing cases finding periods of three and four months too long)). Moreover, circumstantial evidence of timing, without more, is insufficient. See id.; see also O'Brien v. Gularte, 2019 WL 77112, at *3 (S.D. Cal. Jan. 2, 2019) ("Timing alone ... is generally not enough to support an inference that prison officials took an adverse action against a prisoner in retaliation for the prisoner's participation in protected conduct.").

Notably, plaintiff does not cite to any other connection between the December 24 ICC decision and his inmate grievance. He readily admits that none of the defendants discussed the grievance with him or expressed any dissatisfaction with it; he has no other indication that any of the defendants were displeased by the inmate grievance; and he acknowledges that two of the defendants (Smith and Weaver) approved the expungement of the RVR from plaintiff's Central File. Plaintiff is thus left with mere speculation, which is insufficient at the summary judgment stage. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014) (affirming grant of summary judgment

when there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

In addition, though it is possible to construe some of plaintiff's arguments concerning the denial of his hardship request as arguments intended to undermine the legitimate penological reasons proffered by the defendants, none of these arguments is availing. For instance, in their declarations, defendants justified their decision to transfer plaintiff to the Pelican Bay SHU by citing space issues resulting from the primary use of the CSP-Cor and CSP-Sac SHUs, and plaintiff rebuts by pointing out that none of these factors prevented his transfer back to CSP-Cor by the Pelican Bay ICC. But it is not enough that a later ICC found it possible to grant plaintiff's hardship request and transfer him back; plaintiff is required to show that the penological reasons factored in by the defendants were improper at the time the decision was made. Furthermore, plaintiff's reliance on the aforementioned news article to rebut the defendants' reference to safety and security issues fails for the reasons discussed supra. Plaintiff has therefore not met his burden to rebut the legitimate penological reasons provided by the defendants, particularly in light of the deference and flexibility this court must provide "to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).

In sum, the Court concludes that plaintiff has not met his burden in producing evidence to show a dispute of material fact, and defendants' motion for summary judgment should be granted. In light of this recommendation, the Court declines to consider defendants' alternative ground for summary judgment based on qualified immunity.

**V.     Conclusion**

Based on the foregoing, the Court **DENIES** plaintiff's motion to declare defendants' declarations a sham; and

The Court **RECOMMENDS** that defendants' motion for summary judgment be granted and judgment be entered for them on plaintiff's First Amendment retaliation claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within

fourteen days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**February 3, 2021**__     _____**/s/ Jennifer L. Thurston**_____
                                                        UNITED STATES MAGISTRATE JUDGE